United States District Court
Southern District of Texas
**ENTERED**
October 08, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCISCO JAVIER PLATAS ARCOS, | § § | CIVIL ACTION NO 4:25-cv-04599 |
| Petitioner, | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| KRISTI NOEM, *et al*, | § | |
| Respondents. | § | |

**OPINION AND ORDER**

The petition for writ of *habeas corpus* by Petitioner Francisco Javier Platas Arcos is granted. Dkt 1.

1. Background

This case involves the continued detention of a noncitizen pending appeal under an automatic stay of an order for his release on conditions imposed by an immigration judge after hearing. See 8 CFR §1003.19(i)(2).

Petitioner was born in Mexico, came to the United States in 2012, and married a United States citizen in 2018. Dkt 1 at ¶27. He obtained an I-130 immigrant visa in 2021 and an I-601A unlawful presence waiver in 2024. Id at ¶2.

He was arrested on August 5, 2025, following a routine traffic stop for dark window tint. Dkt 1 at ¶28. The assigned Immigration Judge found that the Department of Homeland Security didn't present sufficient proof to establish that Petitioner was subject to mandatory detention. Id at ¶29. The IJ thus ordered him released under bond in the amount of $3,000. Id at ¶29; see Dkt 1-1 (IJ order).

Respondents reserved their right to appeal the IJ order. Dkt 1 at ¶30. In doing so, they invoked the automatic stay pending appeal provided for by 8 CFR §1003.19(i)(2). Dkt 9 at 1. That regulation in part provides:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.

Petitioner thus remains in custody. Dkt 1 at ¶31. He seeks a writ of *habeas corpus* under 28 USC §2243. He argues that his continued detention under 8 CFR §1003.19(i)(2) (i) violates procedural due process, (ii) violates substantive due process, and (iii) arises from a regulation that itself exceeds the authority delegated to the Attorney General by Congress under 18 USC §§1226(a), (c).

Respondents were ordered to show cause in this regard. Dkt 3. They complied with a one-page filing that neither cited cases nor attached evidence. Dkt 9. Petitioner replied and later filed supplemental authority. Dkts 10–11.

2. Legal standard

The Fourteenth Amendment to the United States Constitution in relevant part provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." Violations of this clause can give rise to both procedural and substantive due process claims. Only the former will be addressed here.

Procedural due process "considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Bowlby v City of Aberdeen*, 681 F3d 215, 222 (5th Cir 2012), quoting *Caine v Hardy*, 943 F2d 1406, 1411

(5th Cir 1991). The injury stemming from such a denial "is not the liberty or property that was taken from the plaintiff, but the fact that it was taken without sufficient process." Ibid. The Supreme Court holds that noncitizens are entitled to due process of law under the Fifth Amendment. *Demore v Kim*, 538 US 510, 523 (2003).

Courts apply the test set forth in *Mathews v Eldridge* to determine whether government action violates a person's right to due process. See 424 US 319 (1976). In doing so, they weigh (i) the private interest that will be affected, (ii) the risk of an erroneous deprivation of that interest through the procedures used, and the probable value (if any) of additional or substitute procedural safeguards, and (iii) the governmental interest, including the function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail. Id at 335.

    3. Analysis

As presented here, the pertinent factors weigh in favor of granting the writ.

*As to the private interest affected,* the Supreme Court has observed that freedom from physical detention is "the most elemental of liberty interests." *Hamdi v Rumsfeld*, 542 US 507, 529 (2004). And so, other courts considering challenge of §1003.19(i)(2) as applied in similar circumstances have considered whether the detainee is held in conditions that are indistinguishable from criminal incarceration. *Martinez*, 2025 WL 2598379 at *2, citing *Günyadin v Trump*, 784 F Supp 3d 1175, 1187 (D Minn 2025). This is because the private interest when asserted in such context is without question significant.

Petitioner argues that he faces continued detention pending appeal and that his freedom from such is "of the highest constitutional import." Dkt 1 at 14; see *Günyadin*, 784 F Supp 3d at 1187 (observing that such detention includes "all the deprivations of incarceration," including lack of freedom and privacy, along with loss of access to or contact with family, friends, work, and education).

Respondents neither dispute that detention will continue through the appellate process, nor argue that the conditions of confinement differ in any material way from criminal incarceration. See Dkt 3.

This factor weighs in Petitioner's favor.

*As to risk of erroneous deprivation of that interest,* courts examine the risk that the private interest at issue will be deprived through the procedures in place, as well as the "probable value of additional or substitute procedural safeguards." *Mathews*, 424 US at 335.

Other courts have found a significant risk of erroneous deprivation under §1003.19(i)(2). This is because the only detainees subject to the automatic stay are those whose detention an IJ has already determined to be unsupported by sufficient evidence. For example, see *Martinez v Noem*, 2025 WL 2598379, *2 (WD Tex); *Sampiao v Hyde*, 2025 WL 607924, *10 (D Mass), citing *Garcia Jimenez v Kramer*, 2025 WL 2374223, *3 (D Neb); *Günyadin*, 784 F Supp 3d at 1187. That the stay is automatic increases this risk for the very reason that this section doesn't require Respondents to make any *individualized* determination as to the need for a stay. Instead, the stay automatically issues simply upon indication by the Government of an intent to appeal the IJ order. This carries a significant risk that a detainee will have remained erroneously detained for the duration of appeal. *Martinez*, 2025 WL 2598379 at *3, citing *Günyadin*, 784 F Supp 3d at 1188.

An alternative procedure exists that would readily mitigate such risk. The immediately prior subsection, 8 CFR §1003.19(i)(1), allows Respondents at any time to obtain a stay pending appeal from the Board of Immigration Appeals. Such stay is discretionary, however, rather than automatic, thus affording the BIA opportunity to examine the individual circumstances of individual detainees. Other courts have agreed that this additional procedural safeguard adequately addresses the risk of erroneous deprivation. For example, see *Martinez*,

4

2025 WL 2598379 at *3; *Sampiao*, 2025 WL 2607924 at *11; *Günyadin*, 784 F Supp 3d at 1189.

This factor also weighs in Petitioner's favor.

*As to the asserted governmental interest*, courts weigh the private interest at stake and the risk of erroneous deprivation against the interest of the asserted governmental interest. See *Mathews*, 424 US at 348.

Petitioner argues that the stated purpose of the automatic-stay provision is to prevent a noncitizen from fleeing and to protect the public from potential harm. Dkt 1 at 15; for example, see Department of Justice, Review of Custody Determinations, 71 Fed Reg 57873, 57880 (2006) (adopting interim rule including automatic stay provision, and noting, "A custody decision that allows for immediate release is effectively final if the alien turns out to be a serious flight risk, a danger to the community, or otherwise did not merit bond."). This is paired with argument that Respondents have presented no evidence that Petitioner himself presents either of these concerns. Id at 16. He also factually notes that, in his particular circumstances, he's "on the pathway to legal status," which indicates that "he is not a flight risk." Ibid.

Respondents haven't directly argued their interest in the automatic stay. Nor have they, for that matter, responded to Petitioner's argument on procedural due process. See *Günyadin*, 784 F Supp 3d at 1185 (noting absence of Government argument in response to similar petition); *Sampiao*, 2025 WL 2607924 at *12 (same). They instead state only that Petitioner "is detained pursuant to applicable federal regulations which contemplate and permit such detention." Dkt 9 at 1. While that assertion is no doubt true, it simply avoids the constitutional question, rather than address it. Other courts in similar, recent actions have likewise rejected contention by the Government with respect to its simple assertion of preference to maintain the automatic stay and avoid the burdens of additional procedures. For example, see

5

*Martinez*, 2025 WL 2598379 at *4, citing *Mathews*, 424 US at 335; *Sampiao* 2025 WL 2607924 at *12.

To the extent such assertion can also be reasonably construed as an implied assertion of an interest in preventing detainees from fleeing prosecution or endangering the community while on appeal, the interest is itself legitimate. See *Sampiao*, 2025 WL 2607924 at *12, citing *Hernandez-Lara*, 10 F4th 19, 32–33 (1st Cir 2021): "The government does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." But mere assertion doesn't address the constitutional question, as it doesn't account for the requisite balancing under *Mathews*, or how it could be said to outweigh the liberty interest of Petitioner or the risk of erroneous detainment during the pendency of IJ appeal. This is particularly true where, as noted above, Respondents have another option under the regulations to overturn the subject order—to say nothing of their ability to make a sufficient showing to the IJ of individual circumstances warranting detention in the first instance.

*In sum,* it is determined that the balance of the factors stated in *Mathews v Eldridge* indicates that the automatic stay provided by 8 CFR §1003.19(i)(2), as applied to Petitioner, violates his right to procedural due process. This accords with a large number of cases to have addressed the issue recently. See *Sampiao*, 2025 WL 2607924 at *12; *Günyadin*, 784 F Supp 3d at 1190; *Garcia Jimenez*, 2025 WL 2374223 at *4; *Hasan v Crawford*, 2025 WL 2682255, *13 (ED Va); *Arce v Trump*, 2025 WL 2675934, *6 (D Neb); *Vazquez v Feeley*, 2025 WL 2676082, *21 (D Nev); *Herrera v Knight*, 2025 WL 2581792, *12 (D Nev); *Leal-Hernandez v Noem*, 2025 WL 2430025, *14 (D Md); *Anicasio v Kramer*, 2025 WL 2374224, *4 (D Neb); see also *Martinez*, 2025 WL 2598379 at *4 (finding detainee likely to succeed on merits of procedural due process argument). And notably, upon inquiry at hearing, Respondents could cite no cases finding to the contrary on facts similar to those here.

*As to other arguments*, Petitioner argues that (i) his detention violates substantive due process, and (ii) 8 CFR §1003.19(i)(2) itself exceeds the authority delegated to the Attorney General by Congress. Given the finding of a violation of procedural due process, it is unnecessary to address these further contentions.

4. Conclusion

The petition for writ of *habeas corpus* by Petitioner Francisco Jacier Platas Arcos is GRANTED. Dkt 1.

It is ORDERED that Respondents immediately release Petitioner from detention upon successful payment of the $3,000.00 bond as previously ordered by the assigned Immigration Judge. See Dkt 1-1 (IJ order).

It is further ORDERED that Respondents are RESTRAINED from continuing to hold Petitioner in detention after successful payment of the $3,000.00 bond.

If desired, Petitioner may now bring application for attorney fees and costs, if and as available by law. See Dkt 1 at 20. Any such application must be made by October 22, 2025.

SO ORDERED.

Signed on October 8, 2025, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge